UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| ROSALINDA PENNINGTON, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 3:16-CV-230 |
| § | |
| COMMISSIONER OF SOCIAL § | |
| SECURITY ADMINISTRATION, § | |
| § | |
| Defendant. § | |

## MEMORANDUM OPINION AND ORDER

The Plaintiff, Rosalinda Pennington, seeks judicial review of an administrative decision denying her disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. The parties have filed cross-motions for summary judgment (Dkt. 10 and Dkt. 12). Having reviewed those motions, along with the administrative record and the applicable law, the Court will grant Pennington's motion and remand this case to the Commissioner of the Social Security Administration ("Commissioner") for further proceedings consistent with this opinion.

### I.  PROCEDURAL BACKGROUND

Pennington filed applications under Titles II and XVI on November 15, 2013, claiming disability beginning on June 11, 2013 (Dkt. 6-2 at p. 12). Her claims were denied initially on March 10, 2014 and on reconsideration on June 13, 2014 (Dkt. 6-2 at p. 12; Dkt. 6-4 at pp. 4, 15). Pennington requested a hearing, and an Administrative Law Judge ("ALJ") conducted one on September 29, 2015 (Dkt. 6-2 at pp. 12, 30). The ALJ issued her decision denying benefits on November 23, 2015 (Dkt. 6-2 at p. 9). The Social

Security Administration's Appeals Council denied review on April 20, 2016 (Dkt. 6-2 at p. 2).

## II.     STANDARD OF REVIEW

Pennington has invoked 42 U.S.C. § 405(g), which provides for a review by this Court of the Commissioner's decision. Generally, under Section 405(g), a reviewing court may only "ascertain whether substantial evidence supports the final decision and whether the Commissioner used the proper legal standards to evaluate the evidence." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002). The reviewing court may not reweigh the evidence, try the questions *de novo,* or substitute its judgment for the Commissioner's, even if it believes the evidence weighs against the Commissioner's decision. *Id*. Conflicts in the evidence are for the Commissioner, not the courts, to resolve. *Id*. "Substantial evidence is more than a mere scintilla and less than a preponderance." *Id*. (internal quotation marks omitted).

As relevant here, "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). The Commissioner uses a sequential five-step approach to evaluate disability claims. The five steps, in order, ask: (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) whether the impairment prevents the claimant from

doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the Commissioner determines at a particular step that the applicant is or is not disabled, the evaluation process stops; if the Commissioner cannot determine at a particular step that the applicant is or is not disabled, the Commissioner goes on to the next step. 20 C.F.R. § 404.1520(a)(4). If the Commissioner progresses beyond the third step, the Commissioner assesses the claimant's residual functional capacity—i.e. "the most [the claimant] can still do despite [his or her] limitations"—and that assessment is used to evaluate the claim at steps four and five. 20 C.F.R. §§ 404.1520(a)(4), 404.1545(a)(1). The residual functional capacity assessment helps determine whether the claimant can perform his or her past relevant work (step four) and whether the claimant can adjust to other work (step five). 20 C.F.R. § 404.1520(e). For the first four steps, the burden of proof is on the claimant to prove disability. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to prove the existence of other available substantial gainful employment that the claimant can perform. *Fraga v. Bowen*, 810 F.2d 1296, 1301–02 (5th Cir. 1987). If the Commissioner adequately points to potential alternative employment, the burden then shifts back to the claimant to prove that he or she is unable to perform the alternate work. *Id*.

All that said, Pennington's action under Section 405 revolves around two somewhat narrow questions: (1) whether the ALJ violated the Social Security Administration's procedures governing the provision of evidence to a medical expert; and (2) if she did, whether that violation prejudiced Pennington. The relevant procedures are

contained in the Administration's Hearings, Appeals, and Litigation Law Manual ("HALLEX"), and a violation of HALLEX policies requires reversal of the Commissioner's decision when that policy violation results in prejudice to the claimant. *Morgan v. Colvin*, 803 F.3d 773, 777–78 (5th Cir. 2015); *Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000). A claimant can make the necessary showing of prejudice by establishing that the policy violation directly affected the ALJ's analysis of the step at which the Commissioner denied benefits and that, had the ALJ adhered to HALLEX, a different result might have been reached. *Morgan*, 803 F.3d at 777–78 ("A finding that Morgan's testimony regarding pain was not credible may very well have been supported by substantial evidence—had the ALJ actually heard the testimony."); *see also Ripley v. Chater*, 67 F.3d 552, 557 n. 22 (5th Cir. 1995) ("Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision."). The claimant need only show a "reasonable possibility" that a different result would have been reached absent the policy violation—it is not required that the claimant show that a different result was "likely." *See Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994). Put another way, remand is required when a reviewing court concludes that a procedural violation is not harmless. *See Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003). An error is harmless where, even absent the alleged error or omission, there is "no realistic possibility" that the ALJ would have reached a different result. *January v. Astrue*, 400 Fed. App'x. 929, 933 (5th Cir. 2010) (per curiam) (unpublished).

## III. THE MERITS

### a. Pennington's argument for reversal

Pennington was 55 at the alleged onset date of her disability (Dkt. 6-6 at p. 2). She had a ninth-grade education and no specialized job training (Dkt. 6-6 at p. 7). The records and testimony before the ALJ indicated that Pennington had worked in the past as a salesperson and a customer service clerk, both of which were light-duty semi-skilled jobs and neither of which required skills that were transferable to sedentary work (Dkt. 6-2 at pp. 61–62). Given these circumstances, a finding that Pennington was limited to sedentary work (and therefore could no longer perform the light-duty jobs she used to do) would have, under the applicable guidelines, required a finding that Pennington was disabled:

> The adversity of *functional restrictions to sedentary work at advanced age (55 and over)* for individuals with no relevant past work or *who can no longer perform vocationally relevant past work* and *have no transferable skills, warrants a finding of disabled* in the absence of the rare situation where the individual has recently completed education which provides a basis for direct entry into skilled sedentary work.
> 20 C.F.R. Part 404, Subpart P, Appendix 2, Section 201.00(d) (emphasis added); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2, Table No. 1, Rule 201.02.

However, the ALJ found that Pennington was not limited to sedentary work and, rather, "[was] capable of performing past relevant work as a sales person and customer service clerk" (Dkt. 6-2 at p. 24). The ALJ reached that conclusion in the face of testimony from the medical expert that Pennington's residual functional capacity limited her to sedentary work (Dkt. 6-2 at pp. 41–44, 65). Pennington's argument for reversal pivots on the ALJ's decision to ignore the medical expert's testimony about Pennington's

functional limitations. Pennington acknowledges that the ALJ was not required to blindly accept the medical expert's opinion; but she points out that the ALJ's rationale for rejecting that opinion was, according to the ALJ herself, based on the fact that particular testimony regarding Pennington's daily activities was not available to the expert because the expert testified before Pennington did (Dkt. 11 at pp. 14–15). According to Pennington, since it was the ALJ's responsibility under HALLEX to provide the medical expert with all relevant evidence, the ALJ's rejection of the medical expert's opinion on the basis that the medical expert did not have the benefit of that particular evidence amounts to a procedural violation (Dkt. 11 at pp. 14–15). The procedural violation was prejudicial, the argument continues, because it bore directly on the ALJ's finding at step four that Pennington could perform her past relevant work. As Pennington puts it, "had [the medical expert been] given the opportunity to discuss this additional evidence, the ALJ could have accepted his opinion when she determined Pennington's residual functional capacity. Moreover, had [the medical expert's testimony regarding Pennington's] limitations been accepted by the ALJ, the Medical-Vocational Rule 201.01[1] would have directed a finding of disabled—a different result" (Dkt. 11 at p. 20).

    b. **The medical expert's testimony**

The ALJ called Dr. Giao Hoang to give medical expert testimony at the hearing on Pennington's application for benefits (Dkt. 6-4 at p. 57). Dr. Hoang never examined Pennington and formed his opinions based on a review of records sent to him by the ALJ

---

[1] This appears to be a typographical error in Pennington's brief. The applicable rule is actually Medical-Vocational Rule 201.02, and Pennington cites the correct rule in several other places in her brief (Dkt. 11 at pp. 14, 19).

(Dkt. 6-2 at pp. 37–38; Dkt. 6-4 at p. 57). For reasons that are unclear from the record, Dr. Hoang testified before Pennington did, and not after (Dkt. 6-2 at pp. 35, 44). At the administrative hearing, Dr. Hoang noted that Pennington, a breast cancer survivor, had in the past undergone a bilateral mastectomy followed by reconstructive surgery; had "a mild herniated disc at the level L5-S1, and also at T12 and L1[;]" was suffering from degenerative disc disease "at multiple level[s]" of her spine; displayed "evidence of facet arthritis" in her cervical spine; had "a small tear of the infraspinatus tendon" in her left shoulder; and had "mild degenerative disease of the left hip" (Dkt. 6-2 at pp. 38–40). Citing Pennington's "multiple surgeries" and her spine, hip, and shoulder problems, Dr. Hoang opined that Pennington could lift less than ten pounds frequently and ten pounds occasionally; could not climb scaffolds or ladders; could not be at unprotected heights; could not balance, crouch, crawl, kneel, or bend; could not lift her left arm above shoulder level; could not perform postural limitations; and, assuming an eight-hour workday, could stand for two hours and sit for six (Dkt. 6-2 at pp. 41–42). Because of chronic pain and incontinence, Dr. Hoang further testified, Pennington would need to be able to change positions at will during the day—in other words, a "sit/stand option"—and would need special restroom accommodations (Dkt. 6-2 at pp. 42–44).

### c. The ALJ's opinion and the HALLEX requirements

No one disputes that, had the ALJ accepted Dr. Hoang's opinion regarding Pennington's functional limitations, Pennington would have been deemed disabled. The ALJ herself admitted as much at the hearing during the testimony of the vocational expert:

> [Pennington's counsel:] Okay. And you were here when Dr. Wang [sic] testified and gave his RFC [residual functional capacity] as far as lifting ten pounds occasionally, less than ten frequently; no climbing, no balancing, no postural, no lifting your left arm above the head; sitting a maximum of six; standing two; with a sit/stand option at will and restroom accommodations? That one?
>
> [Vocational expert:] Yes.
>
> . . .
>
> [Pennington's counsel:] That RFC, would that be classified as sedentary, light, less than sedentary?
>
> [Vocational expert:] Sedentary.
>
> [Pennington's counsel:] Okay. And you're familiar with the Grid rules?
>
> [Vocational expert:] I am.
>
> [Pennington's counsel:] Okay. Okay, so [Pennington] is 57 years old.
>
> [ALJ:] Okay, well we know that that—where that if it's sedentary, she grids.
>
> Dkt. 6-2 at p. 65.

However, the ALJ rejected Dr. Hoang's testimony. Her written opinion gave the following explanation:

> As for the opinion evidence, the undersigned notes that she has considered and given little weight to the functional limitations opined by the medical expert, Dr. Hoang. He did not receive exhibits that described the types of activities of daily living [Pennington] performed, so he did not know that she drove multiple times a week, including driving 30 miles, twice a week to visit her mother. She also was non-compliant with her treatment regarding her foot, which included going out dancing, wearing cowboy boots, and not properly keeping her foot wrapped, per her physician's orders. She further testified that she believed she was able to work full time while looking for work when she was receiving unemployment, which was during a significant part of the relevant period under review. Those

> activities are inconsistent with Dr. Hoang's opinion that the claimant is only capable of being able to stand/walk 2 hours during an 8-hour workday. Dkt. 6-2 at p. 23.

All of the information used by the ALJ to justify her rejection of Dr. Hoang's opinion was discussed during Pennington's testimony (Dkt. 6-2 at pp. 44–60).

The HALLEX guidelines place upon an ALJ the duty to provide a medical expert "with any relevant evidence that the [medical expert] will need to formulate and provide an opinion." HALLEX Section I-2-5-38.[2] The federal regulations governing Social Security cases provide a definition of "evidence" that includes the claimant's statements. 20 C.F.R. § 404.1513(a)(4) ("Evidence from nonmedical sources is any information or statement(s) from a nonmedical source (including you) about any issue in your claim.").[3] Moreover, the HALLEX guidelines require an ALJ utilizing an appointed medical expert to, on the record, "[v]erify the [medical expert] has examined all medical and other relevant evidence of record[.]" HALLEX Section I-2-6-70.[4] It is not required that the medical expert attend the entire administrative hearing; but, "[i]f the [medical expert] was not present to hear pertinent testimony, such as testimony regarding the claimant's current medications or sources and types of treatment, the ALJ will summarize the testimony for the [medical expert] on the record." *Id*. Obviously, as even the ALJ herself

---

[2] The Court accessed the HALLEX guidelines at the website of the Social Security Administration. This guideline is located at the following URL: https://www.ssa.gov/OP_Home/hallex/I-02/I-2-5-38.html.

[3] In 2015, when Pennington's administrative hearing was held, the relevant definition of "evidence" was equally broad and materially identical, though it was phrased differently. It was located at 20 C.F.R. § 1512(b)(3) ("Evidence . . . includes, but is not limited to . . . statements you make . . . in testimony in our administrative proceedings[.]").

[4] This guideline is located at the following URL: https://www.ssa.gov/OP_Home/hallex/I-02/I-2-6-70.html.

admitted in her written opinion, this was not done—Dr. Hoang testified before Pennington, and he does not appear in the record at any point after her testimony. And the ALJ also explicitly admitted in her opinion that she rejected Dr. Hoang's opinion based on information that was elicited during Pennington's testimony and with which Dr. Hoang was not otherwise provided.

If Dr. Hoang, as the ALJ put it, "did not receive" pertinent evidence, then it was the ALJ's responsibility to see that he nevertheless had the opportunity to address that evidence on the record, particularly because the ALJ's decision to call Dr. Hoang to the stand before Pennington is what denied Dr. Hoang the opportunity to consider the evidence in the first place. The Court stresses that it is well aware that whether something is "relevant" to the medical expert's testimony may vary with each case. The Court does not mean to lay down a blanket rule that every claimant statement or filing is necessarily "relevant" and must be provided to the medical expert in every case. But here, given the ALJ's stated rationale, the claimant's statements should have been provided.[5] The Court is mindful that "procedural perfection is not required unless it affects the substantial rights of a party[,]" *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012), and that the result may well be the same on remand. However, it is equally true that "procedure is the essential safeguard that *protects* substantive rights," *Ingalls Shipbuilding, Inc. v. Director, Office of Workers' Compensation Programs, U.S. Dep't of Labor*, 102 F.3d

---

[5] This is particularly true considering that the ALJ could have called Dr. Hoang to discuss Pennington's failure to follow prescribed treatment or to resolve conflicts in the evidence, which are two permissible reasons for an ALJ to obtain a medical expert opinion under HALLEX. *See* HALLEX Section I-2-5-34(A)(2) at https://www.ssa.gov/OP_Home/hallex/I-02/I-2-5-34.html.

1385, 1390 (5th Cir. 1996) (emphasis added), so "[a] procedural error is not made harmless simply because the aggrieved party appears to have had little chance of success on the merits anyway." *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 546 (6th Cir. 2004) (brackets and quotation marks omitted).

The Court holds that the failure of the ALJ to ensure that Dr. Hoang was provided with all pertinent evidence and that he had the opportunity to address that evidence on the record constituted a violation of HALLEX Sections I-2-5-38 and I-2-6-70, as supplemented by the definition of "evidence" that was, at the time of Pennington's administrative hearing, located at 20 C.F.R. § 1512(b). Because the ALJ explicitly rejected Dr. Hoang's opinion as to Pennington's functional limitations based on Dr. Hoang's inability to consider relevant evidence, the procedural violation directly affected the ALJ's analysis at step four of the required framework, which is the step at which benefits were denied. Had the ALJ adhered to HALLEX and provided Dr. Hoang with all of the relevant evidence, Dr. Hoang might still have reached the same conclusion; and Pennington might have been awarded benefits. *Morgan* and its progenitors require reversal of the ALJ's decision.

## IV. CONCLUSION

Based on the foregoing, the Court **ORDERS** that Pennington's motion for summary judgment (Dkt. 10) is **GRANTED** as follows: the decision of the Commissioner is **REVERSED** and this matter is **REMANDED** to the Commissioner for further proceedings consistent with this opinion. The Commissioner's motion for summary judgment (Dkt. 12) is **DENIED**, and

The Clerk shall provide a copy of this order to the parties.

SIGNED at Galveston, Texas, this 29th day of September, 2017.

_George C. Hanks Jr._
George C. Hanks Jr.
United States District Judge